UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, et al., | IN ADMIRALTY |
| Plaintiffs/Counterclaim Defendants, | NO. C20-00401-RSM |
| v. | ORDER DENYING DEFENDANTS-COUNTERCLAIM PLAINTIFFS ICICLE'S MOTION TO DISQUALIFY COUNSEL |
| ICICLE SEAFOODS, INC., et al., | |
| Defendants/Counterclaim Plaintiffs. | |

## I.    INTRODUCTION

This matter comes before the Court on Defendants-Counterclaim Plaintiffs Icicle Seafoods, Inc., and ISVesselCo, Inc. (collectively, "Icicle")'s Motion to Disqualify Counsel from representing Plaintiffs-Counterclaim Defendants in this matter.[1] Dkt. #45.  Icicle argues that Plaintiffs' counsel, Matt Crane, is a key fact witness in this case and should therefore be disqualified under Washington's Rules of Professional Conduct ("RPC") 3.7 and 1.7.  Icicle

---

[1] The Court strongly disfavors footnoted legal citations as they "serve as an end-run around page limits and formatting requirements dictated by the Local Rules" and make it more challenging for the Court to review the brief. *Rosario v. Starbucks Corp.*, No. C16-01951RAJ, 2017 WL 4122569, at *1 (W.D. Wash. Sept. 18, 2017); *see* Local Rules W.D. Wash. LCR 7(e). The Court strongly discourages counsel from footnoting their legal citations in future submissions.

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 1

also argues that Mr. Crane's firm Bauer, Moynihan & Johnson ("Bauer Moynihan") should be disqualified as well. *Id.* Plaintiffs oppose the motion, claiming that the hypothetical testimony from Crane is neither material nor prejudicial to Plaintiffs and can be obtained elsewhere, and that exceptions to the Rules are applicable in any event. Dkt. #49. The Court finds oral argument unnecessary to resolve the relevant issues.

For the reasons set forth below, the Court DENIES Icicle's Motion to Disqualify. Plaintiffs have also sought sanctions against Icicle, which this Court DENIES.

## II.    BACKGROUND

This action arises out of an insurance claim for Loss of Hire ("LOH") damages claimed by Icicle as a result of engine damage on the vessel R.M. THORSTENSON ("the THORSTENSON") in December 2016 that interrupted Icicle's fish processing operations in 2017 and 2018. After discovery of the engine damage, Icicle submitted a claim under hull and equipment coverage ("the Hull Claim"). The Hull Claim was reported to Icicle's insurers, Plaintiff-Counterclaim Defendants United States Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Great American Insurance Company of New York, Argonaut Insurance Company, Endurance American Insurance Company, Houston Casualty Company, and Certain Underwriters at Lloyd's, London ("Insurers"), and parties settled the Hull Claim in October 2018. Once the Hull Claim was resolved, parties turned to address Icicle's LOH claim for damages incurred from interruptions to their fish processing operations. From 2018 until 2020, parties unsuccessfully attempted to settle the LOH claim. Insurers adjusted Icicle's LOH claim in the amount of $966,638.48, which Icicle refused to accept on the basis that their damages approximated $4 million. Dkt. #1 at ¶ 11, Dkt. #18 at ¶ 86.

On March 13, 2020, Insurers filed a declaratory judgment action in this Court seeking a declaration of Icicle's actual loss of net earnings sustained as a result of the THORSTENSON's

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

December 2016 engine damage and as limited by the policy terms and conditions between the parties.  Dkt. #1 at ¶ 30.  On June 5, 2020, Icicle counterclaimed for violations under breach of contract, breach of duty of good faith and fair dealing, the Washington Consumer Protection Act, RCW 18.86, and the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015.[2]  Dkt. #18 at ¶¶ 88-98.  Parties suspended discovery while attempting mediation but resumed after mediation efforts failed.

Icicle claims $4,043,445.00 in loss of earnings for cod, herring, sockeye salmon, and pink salmon as a result of the THORSTENSON's engine damage.  Dkt. #18 at ¶ 86.  A large percentage of Icicle's claim is comprised of pink salmon loss—specifically, the amount of pink salmon Icicle would have processed had the THORSTENSON been able to travel to a fishing management area in Alaska called "Area M."  Dkt. #1 at ¶ 19.  The instant motion to disqualify concerns an expert report drafted by independent fishing expert Tom Manos, who was retained by Insurers to investigate and draft a report regarding the pink salmon that Icicle would have been able to process in Area M in 2017.  *Id.*  The expert's report ("the Manos Report") concluded that 4.5 million pounds of pink salmon were available in Area M.  Dkt. #18 at ¶ 71.  During a June 2019 meeting, Insurers accidentally disclosed the Manos Report to Icicle.  *Id.*

On October 13, 2020, counsel for Icicle discovered a "previously unknown email" authored by Crane dated June 20, 2019.  Dkt. #45 at 6.  Crane's email summarized the Manos Report as follows:

> [I]n [Manos'] opinion, Icicle could have processed up to 4.5 million lbs of pink salmon in 2017 had the RM THORSTENSON gone to Area M on the Alaska Peninsula in August 2017.  Manos based his opinion on the fishery having a 20-year high run of pink salmon and the surplus of available fish, but that processing that quantity of salmon required the assured to have had arranged

---

[2] Icicle also served a Notification of IFCA Violations Letter dated March 16, 2020 on the Washington Insurance Commissioner's Office and on the Insurers that demanded payment of the LOH claim.  Dkt. #18 at ¶ 82.

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 3

1
2
3

catcher boats, tenders and trampers in advance to be able to handle such a volume of fish. Those are big assumptions and are part of the requests in the attached forensic accounts' letter, *but Manos' report provides some independent support for the assured's loss of pink salmon claim . . . . At this point we intend to retain his report as a consulting expert report and not disclose it to the assured.*

4

Dkt. #46-1 at 38 (emphasis added). After discovering Crane's email, Icicle's counsel sent a

5

letter to Crane and Bauer Moynihan dated October 19, 2020, requesting that Crane and his firm

6

withdraw from this matter. *Id.* at 41-43. In demanding Crane and his firm's withdrawal, Icicle

7

argued that Insurers' previous attempt to bury the Manos Report violated their fiduciary duty

8
9

and gave rise to a potential malpractice claim by Insurers against Crane and Bauer Moynihan.

10

*Id*. Crane refused to withdraw and still represents Insurers.

11

On November 12, 2020, Icicle filed the instant motion to disqualify Crane and his firm

12

from representing Insurers. Dkt. #45. Icicle claims that Crane is a necessary witness for its bad

13

faith claims against Insurers, as Icicle will need to cross-examine Crane regarding his decision

14

to "bury the Manos report." *Id.* at 9. For that reason, Icicle argues, Crane must be disqualified

15

from this matter under RCP 3.7(a). as well as under RCP 1.7(a)(2) for an irreconcilable conflict

16
17

of interest with his clients. It further argues that Bauer Moynihan must be disqualified under

18

RCP 1.7(a)(2) since Crane's conflict of interest is imputed to them. *Id.* at 13.

19

### III.    DISCUSSION

20

#### A.  Legal Standard

21

This Court's Local Civil Rule 83.3 (a)(2) directs that "attorneys appearing in this district

22

shall . . . comply with . . . the Washington Rules of Professional Conduct (RPC)." Washington

23

RPC 3.7 provides:

24

(a) A lawyer shall not act as an advocate *at a trial* in which the lawyer is likely to be a *necessary witness* unless:

25

(1) the testimony relates to an uncontested issue;

26

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 4

1

2

3

4

5

6

    (2) the testimony relates to the nature and value of legal services rendered in the case;

    (3) disqualification of the lawyer would work substantial hardship on the client; or

    (4) the lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate.

    (b) A lawyer may act as advocate *in a trial* in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

7

*Id.* (emphases added).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Washington courts are reluctant to disqualify an attorney absent compelling circumstances. *Pub. Util. Dist. No. 1 of Klickitat Co. v. Int'l Ins. Co.,* 124 Wn.2d 789, 812, 881 P.2d 1020 (1994). "When an attorney is to be called . . . , a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client." *Id.* (quoting *Cottonwood Estates, Inc. v. Paradise Builders, Inc.,* 128 Ariz. 99, 105, 624 P.2d 296 (1981)). Disqualification is considered "a drastic measure which courts should hesitate to impose except when absolutely necessary." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.,* 637 F. Supp. 1556, 1562 (W.D. Wash. 1986) (citing *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir. 1982)); *see also Venable v. Keever,* 960 F. Supp. 110, 113 (N.D. Tex. 1997) ("Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration"). Disqualification motions are therefore subject to "particularly strict judicial scrutiny." *Am. Safety Cas. Ins. Co. v. Happy Acres Enterprises Co.*, No. C16-0044 RSM, 2017 WL 279616, at *3 (W.D. Wash. Jan. 20, 2017) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,* 760 F.2d 1045, 1050 (9th Cir. 1985)).

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 5

**B. Disqualification for Trial Testimony under RCP 3.7(a)**

As an initial matter, the Court agrees with Insurers that Icicle's motion under RCP 3.7 is premature.  Dkt. #49 at 10.  As this Court has previously stated, "the plain language of Washington RPC 3.7(a) is unequivocally clear in only prohibiting attorneys from acting as an advocate *at trial.*"  *Am. Safety Cas. Ins. Co.*, 2017 WL 279616 at *3 (quoting *Microsoft Corp. v. Immersion Corp.*, No. C07-936RSM, 2008 WL 682246, at *3 (W.D. Wash. Mar. 7, 2008)) (emphasis in original).  Trial in this matter is currently set for September 20, 2021.  At this stage of the case, the fundamental questions raised by Icicle's motion—whether the Manos Report indeed supported Icicle's LOH claims and whether Insurers violated any duty by planning not to disclose it—remain unresolved.  Furthermore, to the extent Icicle seeks to disqualify Crane's law firm under RCP 3.7, this Court has recognized that "RPC 3.7 does not authorize such a broad disqualification."  *Am. Safety Cas. Ins. Co.*, 2017 WL 279616 at *3.

Icicle has also failed to demonstrate that Crane's testimony is unobtainable elsewhere. *Pub. Util. Dist. No. 1,* 124 Wn.2d at 812.  Icicle argues that Crane is the key fact witness for its claims that Insurers acted in bad faith to place their financial interest over that of Icicle.  *See* Dkt. #18 at ¶ 79 ("The Plaintiff insurers either hid the Manos report from their own consultants or purposefully conspired with them to ignore its conclusions.").  The Court is not persuaded that Icicle can only obtain this information from Crane's testimony.  Indeed, Icicle concedes that Crane's email is "powerful evidence" on its own, thereby mitigating the need for Crane to testify.  *See* Dkt. #45 at 9.  Icicle also insists that Crane must be put on the stand to testify as to whether his clients directed him to bury the Manos Report and what communications he had with Insurers' average claims adjuster, Jonathan Spencer, or their accountant, Alvarez & Marsal, regarding the report.  *Id.*  This testimony could be elicited directly from Crane's clients, Spencer, and Alvarez & Marsal.

COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Furthermore, several individuals besides Crane can establish the alleged bad faith by Insurers with respect to their handling of the Manos Report.  Lead underwriter Paul Butler, forensic accountant Benjamin Thomas, and average claims adjuster Spencer each declared that they considered the Manos Report in their individual analyses of Icicle's LOH claim and concluded that it did not demonstrate that Icicle had sustained actual economic damages for pink salmon.  Dkt. #50 at ¶¶ 6-9; Dkt. #51 at ¶ 3; Dkt. #53 at ¶ 4.  Consequently, while Crane may be the only one who can explain his state of mind in sending the June 20, 2019 email, the Court finds that testimony from several other individuals could establish whether Insurers "dealt dishonestly with information they independently obtained about [Icicle]'s pink salmon loss estimate . . . tried to keep information from [Icicle], . . . [and] hid the Manos report from their own consultants or purposefully conspired with them to ignore its conclusions."  Dkt. #18 at ¶¶ 71, 73, 79.

On Reply, Icicle argues that Crane is necessary to testify as to whether he was "directing, orchestrating, and manipulating the conclusions of the consultants" or otherwise swaying their analyses of the Manos Report.  Dkt. #54 at 4-5.  As evidence, Icicle attaches emails written by Crane between February 2019 and December 2019.  Dkts. #55-1 at 2-11.  The Court agrees with Insurers that this new evidence should be struck, given that Icicle improperly raised it for the first time on Reply.  Dkt. #57; *Chandola v. Seattle Hous. Auth.*, No. C13-557 RSM, 2014 WL 4685351, at *3, n.1 (W.D. Wash. Sept. 19, 2014) ("[S]ubmission of evidence for the first time upon reply is improper, as it unfairly deprives the non-movant of opportunity to respond.").  Furthermore, even if the Court were to consider Icicle's arguments, testimony to establish Crane's alleged efforts to sway the consultants' opinions could be elicited from the consultants—it need not be obtained exclusively from Crane.

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Thus, based on the information provided in the email and available from Insurers' lead underwriter, forensic accountant and average claims adjuster, the Court is not persuaded that relevant testimony lies solely with Crane and is unobtainable elsewhere. *Am States. Ins. Co. ex rel. Kommavongsa v. Nammathao*, 153 Wn. App. 461, 467, 220 P.3d 1283 (2009) (Concluding that counsel was "not a necessary witness" where adjuster's file, case adjustors and former counsel could establish alleged inaction of counsel). For these reasons, Crane is not a necessary witness for Icicle's bad faith claims.

Finally, Insurers have demonstrated that disqualification of Crane at this stage would create a substantial hardship. For that reason, the exception to RCP 3.7(a) applies for disqualification that "would work substantial hardship" on the client. RCP 3.7(a)(3). Icicle counters that Insurers "claim disqualification at this early stage in the litigation would work a great hardship, but provide no explanation or evidence for that claim." Dkt. #54 at 7. The Court disagrees. Insurers explained that marine insurance in general—and loss of hire in particular—are "specialized insurance covers" that rarely proceed to litigation and require a unique area of expertise that few lawyers possess, making it difficult to find qualified replacement counsel. Dkt. #50 at ¶ 22; Dkt. #52 at ¶ 5. This challenge is compounded by the fact that replacement counsel would be representing seven different groups of plaintiffs/counter-defendants in this matter, including international clients. *See id.* Icicle failed to rebut either of these points in its Reply. *See* Dkt. #54. Furthermore, since briefing on Icicle's disqualification motion closed, parties have filed discovery motions and cross-motions for summary judgment. *See* Dkts. #74, #81, #86. At this stage of the litigation, the Court finds that disqualification of Crane could reasonably pose a substantial hardship for Insurers.

//

//

COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 8

### C.  Disqualification for Conflict of Interest under RPC 1.7(a)(2)

Icicle also seeks disqualification for an alleged conflict of interest between Crane and

his clients, as well as an imputed disqualification to his entire firm.  Dkt. #45 at 12-13.  Icicle

argues that because Insurers have a potential legal malpractice claim against Crane and Bauer

Moynihan, an irreparable conflict exists between the personal interest of the lawyer and his

clients' interests.  *Id.*  The Court finds that disqualification under RPC 1.7(a) is not appropriate

here.

Washington RPC 1.7(a)(2) provides as follows:

> [A] lawyer shall not represent a client if the representation involves a concurrent
> conflict of interest. A concurrent conflict of interest exists if . . . there is a
> significant risk that the representation of one or more clients will be materially
> limited by the lawyer's responsibilities to another client, a former client or a third
> person or *by a personal interest of the lawyer*.

RPC 1.7(a)(2) (emphasis added).  In resolving motions to disqualify based on a lawyer's conflict

of interest, courts in this district typically place the burden on the firm whose disqualification

is sought to show that no conflict exists.  *Jones v. Rabanco, Ltd.,* No. C03-3195P, 2006 WL

2237708, at *2 (W.D. Wash. Aug. 3, 2006) ("It is the Court's duty to resolve allegations that

arise concerning attorney conflicts of interest because the Court is authorized to supervise the

conduct of the members of its bar. . . . The burden of proof in such matters rests with the firm

whose disqualification is sought.").[3]

Before analyzing whether a conflict exists, the Court first considers whether Icicle has

standing to raise a conflict-of-interest challenge as grounds for disqualifying Crane.  "[N]either

---

[3] The Washington State Supreme Court recently held that federal district courts misinterpreted Comment 6 to
ABA Model rule 1.9 in concluding that the burden rests with the firm whose disqualification is sought.  *Plein v.
USAA Casualty Insurance Company*, 195 Wash. 2d 677, 687, 463 P. 3d 728 (2020).  Given that the record does
not support a finding of conflict of interest, and because Icicle fails to meet standing requirements in the first
instance, the Court need not resolve whether *Plein* affects the court's holding in *Jones*.

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 9

the United States Supreme Court nor the Ninth Circuit has addressed the particular question of whether the standing doctrine bars a nonclient party from moving to disqualify the opposing party's counsel on the grounds of a conflict of interest." *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006).  However, courts in this district have found that the nonclient "must establish a personal stake in the motion to disqualify sufficient to satisfy the irreducible constitutional minimum of Article III."  *Id.* (internal quotations and citations omitted).  Furthermore, courts have recognized their "inherent power to 'protect the integrity of their processes' in the context of ethical disqualification motions."  *Id.* (quoting *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.,* 637 F. Supp. 1556, 1563 (W.D. Wash. 1986)).

The Court is not persuaded that Icicle satisfies the standing requirement to move for disqualification of Crane based on a conflict of interest between Crane and his clients.  Icicle relies on *In Re Cellcyte Genetic Corp. Securities Litigation*, which concluded that a court may exercise its "inherent power to 'protect the integrity of their processes'" and consider motions to disqualify brought against an attorney by nonclients.  No. C08-47RSL, 2008 WL 5000156, at *2 (W.D. Wash. Nov. 20, 2008) (quoting *FMC Techs.*, 420 F. Supp. 2d at 1156).  However, *In Re Cellcyte* considered disqualification of a law firm that represented two other clients in the case and in three related matters, thereby creating "an obvious temptation for [the firm] for 'soft pedal' its cross examination of its own clients to further the interest of other clients, or its own interest in continuing the multiple representation."  *Id.* at *3.  The Court is not presented with a comparable situation here, given that no other clients of Crane—either former or current—are involved such that Crane could potentially be forced to cross-examine his own clients.  *FMC Techs.* is likewise distinguishable, as it addressed disqualification of counsel that previously represented the movant's key witness.  *See* 420 F. Supp. 2d at 1157 ("[D]efense counsel

COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 10

Newman & Newman's former client Mr. Wattles is not a party, but he is now the key witness for Plaintiffs, whereas in FMC I, he was a defendant, aligned with the position of Defendants in the instant litigation.").   Here, in contrast, the alleged conflict is solely between Crane's alleged self-interest and that of his clients.  It does not implicate an "unethical change of sides" or an "open and obvious violation" that would compel the Court to exercise its "plain duty to act." *Id.* at 1156 (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976)).  For these reasons, the Court does not find that Icicle has a sufficient personal stake in Crane's potential conflict with his clients such that it has standing to bring the instant motion.

Furthermore, even if standing were satisfied, the Court finds no "significant risk" that Crane's representation of the Insurers will be materially limited by his self-interest.  RPC 1.7(a). Icicle argues that Crane's actions are grounds for a malpractice suit between Insurers and Bauer Moynihan, making Crane's disqualification "obligatory."  Dkt. #54 at 6 (citing *State v. O'Neil*, 198 Wn. App. 537, 547, 393 P.3d 1239 (2017)).  Again, the case law Icicle relies upon is readily distinguishable from the facts at issue in this matter.  *O'Neil* addressed a conflict of interest created by counsel's supervisee serving as a witness.  The Court concluded that "a significant risk" of conflict of interest existed between counsel's duty to the client, O'Neill, and his duty to the witness, Vargas, who he supervised and employed at the King County Department of Public Defense. *O'Neil*, 198 Wn. App. at 544–45 ("The personal interest at issue is not merely his relationship with Vargas, but how his own supervisory position undermines his advocacy for O'Neil, if Vargas testifies for the State.").  Here, unlike the attorney in *O'Neil*, Crane's alleged self-interest does not openly conflict with the interests of his clients.  On the contrary, the record indicates that Insurers' lead underwriter, forensic accountant, principal claims adjuster, and average claims adjuster reached the same conclusion as Crane that the Manos Report was not relevant to the LOH claim calculation.  Dkt. #50 at ¶¶ 6, 21; Dkt. #51 at ¶ 3;

COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 11

1
2
3
4

Dkt. #52 at ¶ 4; Dkt. #53 at ¶ 4.  Crane's position on the Manos Report therefore does not appear contrary or adverse to Insurers' position.  Accordingly, the Court finds no significant risk of conflict between Crane and his clients with regard to his handling of the Manos Report such that Crane's personal interest would compromise his ability to be an effective advocate.

5
6

For these reasons, the Court declines to disqualify Crane or the Bauer Moynihan law firm from representing their clients in this matter based on Crane's alleged conflict of interest.

7

**D.  Sanctions**

8
9
10
11
12
13
14
15
16
17
18
19
20
21

Finally, Insurers move for sanctions against Icicle for filing the instant motion to disqualify in bad faith.  Dkt. #49 at 11-12.  Where disqualification motions are meritless and brought solely for tactical reasons, the Ninth Circuit has upheld the award of costs and attorney's fees as a sanction under Section 1927.  *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (Finding sanctions appropriate where record was "replete with evidence of tactical maneuvers undertaken in bad faith.").  Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The Ninth Circuit has construed the phrase "unreasonably and vexatiously" to require a showing of intent, recklessness, or bad faith. *Optyl Eyewear*, 760 F.2d at 1048 (quoting *Barnd v. City of Tacoma,* 664 F.2d 1339, 1343 (9th Cir.1982)).

22
23
24
25
26

Although Icicle failed on the merits of its disqualification motion, the Court does not find that the record sufficiently supports a finding that it brought the motion solely for tactical reasons or in bad faith.  Insurers argue that Icicle's motion is "devoid of supporting evidence and none of the authorities cited . . . warrant disqualification" and that its maneuver was "purely tactical."  Dkt. #49 at 12.  These conclusory assertions are insufficient to support their request

COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 12

for sanctions under 28 U.S.C. § 1927, which requires some showing of intent, recklessness or bad faith by the moving party.  Accordingly, the Court declines to issue sanctions.

**E.  Insurers' Motion for Relief from Deadline to File Supplemental Response**

On December 10, 2020, Insurers moved for relief from the deadline to respond to Icicle's motion for disqualification in order to file a supplemental brief supporting their opposition to disqualification.  Dkt. #60.  Because the Court has determined that Icicle's motion is properly denied, Insurers' motion is moot.

## IV.    CONCLUSION

Having reviewed Icicle's Motion to Disqualify, Insurers' Response, Icicle's Reply, Insurers' Surreply, the declarations and exhibits in support thereof, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendants-Counterclaim Plaintiffs Icicle's Motion to Disqualify, Dkt. #45, is DENIED;

(2) Plaintiffs-Counterclaim Defendants Insurers' Motion to File Supplemental Briefing, Dkt. #60, is DENIED as moot.


DATED this 5th day of March, 2021.



RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS-
COUNTERCLAIM PLAINTIFFS ICICLE'S
MOTION TO DISQUALIFY COUNSEL - 13