1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, et al., | IN ADMIRALTY |
| Plaintiffs/Counterclaim Defendants, | Case No. C20-401 RSM |
| v. | ORDER RE: MOTIONS TO COMPEL |
| ICICLE SEAFOODS, INC., et al., | |
| Defendants/Counterclaim Plaintiffs. | |

.

## I.        INTRODUCTION

This matter comes before the Court on parties' pending motions to compel.  Plaintiffs-Counterclaim Defendants United States Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Great American Insurance Company of New York, Argonaut Insurance Company, Endurance American Insurance Company, Houston Casualty Company, and Certain Underwriters at Lloyd's, London ("Insurers") and  Defendants-Counterclaim Plaintiffs Icicle Seafoods, Inc., and ISVesselCo, Inc. (collectively, "Icicle") have both moved to compel production of certain documents. Dkts. #71, #81.  The Court resolves these motions as set forth below.

//

ORDER RE: MOTIONS TO COMPEL - 1

## II.    BACKGROUND

A full background of this case is not necessary given this Court's previous orders in this matter.  *See* Dkt. #40, #48.  This action arises out of an insurance claim for Loss of Hire ("LOH") damages claimed by Icicle as a result of engine damage on the vessel RM THORSTENSON in December 2016 that interrupted Icicle's fish processing operations in 2017 and 2018.  Icicle claims $4,043,445.00 in loss of earnings for cod, herring, sockeye salmon, and pink salmon as a result of the RM THORSTENSON's engine damage.  Insurers brought this action seeking a declaratory judgment setting forth Icicle's actual loss of net earnings sustained as a result of the THORSTENSON's December 2016 engine damage and as limited by the policy terms and conditions between the parties.  Dkt. #1 at ¶ 30.  Icicle counterclaims for breach of contract, breach of duty of good faith and fair dealing, the Washington Consumer Protection Act, RCW 18.86, and the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015.  Dkt. #18 at ¶¶ 88-98.

## III.    DISCUSSION

### A.  Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  "District courts have broad discretion in determining relevancy for discovery purposes."  *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  If requested discovery is not

ORDER RE: MOTIONS TO COMPEL - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

answered, the requesting party may move for an order compelling such discovery.  Fed. R. Civ. P. 37(a)(1).  The party that resists discovery has the burden to show why the discovery request should be denied.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B.  Insurers' Motion to Compel**

Before proceeding to Insurers' specific requests for production ("RFPs"), the Court will address Icicle's general arguments opposing Insurers' motion.  First, Icicle contends that Insurers have not met the Rule 37 certification requirements regarding good faith efforts to confer or attempt to confer with Icicle prior to filing its motion.  Dkt. #78 at 12.  However, Insurers' declarations and accompanying exhibits set forth in sufficient detail Insurers' efforts to confer, *see* Dkt. #73, and Icicle has provided its November 10, 2020 letter objecting to Insurers' discovery requests.  *See* Dkt. #79 at 4-8.  The Court finds that Insurers have met Rule 37 certification requirements.

Icicle also requests that the Court appoint a special master to oversee the conduct of discovery.  Dkt. #78 at 14.  Icicle cites parties' dispute over RFP No. 35 as "one reason" it requests appointment of a Special Master, but this request was not raised in Insurers' motion.  The Court agrees with Insurers that Icicle has not shown a clear need for a Special Master to resolve parties' discovery disputes and therefore denies Icicle's request at this time.  *See* Fed. R. Civ. P. 53 Advisory Comm. Notes on Rules—2003 Amend. (Limiting appointment to pretrial master "when the need is clear.").

Turning to Insurers' specific discovery requests, the Court GRANTS Insurers' motion to compel as set forth below.

//

//

i.      Interrog. No. 1 and RFP No. 26

Insurers request identification of facts, persons, and documents supporting the statement by Icicle's forensic accountants Matson Driscoll & Damico, Ltd. ("MDD") in its revised loss of hire report dated February 26, 2020 that "[t]he insured's representative has advised that by the start of August 2017, the insured would have recognized that existing supply did not require RMT [RM THORSTENSON] processing in Prince William Sound and, therefore, they would have travelled to Area M near the Alaskan Peninsula to purchase Pinks, arriving no later than August 6, 2017" (Interrog. No. 1) and all documents identified in response to that answer (RFP No. 26).

The Court agrees these documents are relevant to Insurers' claims seeking to determine Icicle's actual loss of net earnings resulting from the THORSTENSON's December 2016 engine damage.  Although Icicle initially objected to this interrogatory on the basis that it should be addressed through discovery directed to MDD, Dkt. #73-2 at 3, Icicle does not presently object to Insurers' request.  Instead, it contends that it "continues to review thousands of emails and will continue to supplement responsive documents."  Dkt. #78 at 6.  Insurers' motion is therefore GRANTED with respect to Interrog. No. 1 and RFP No. 26.

ii.     RFP Nos. 13, 15-16, 23

Insurers request communications and records, including emails concerning the fisheries in 2017 and 2018 for which losses have been claimed (RFP No. 13); daily sales journals and detailed inventory records by finished product of cod, herring, sockeye and pink salmon, 2013 through 2019 (RFP No. 15); expense records for sales of the seafood products of the cod, herring, sockeye salmon and pink salmon losses claimed, 2013 through 2019 (RFP No. 16); and MDD records and files in Halifax, Nova Scotia, Canada concerning Icicle's loss of hire claims for 2017

and 2018, including all documents and information concerning MDD's loss of hire reports and source documents (RFP No. 23).

The Court agrees these documents are relevant to Insurers' claims. Icicle initially objected to these requests as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and objected that responsive documents were either previously provided to Insurers by MDD or that the request was more appropriately directed to MDD. Dkt. #73-2 at 10-14. Now, however, Icicle contends that Insurers' motion is unnecessary and premature given that Icicle will "continue to supplement its production" for RFP No. 13, intends to supplement its production for RFP Nos. 15-16, and has "just recently obtained" documents for supplemental production in response to RFP No. 23. Given that Icicle does not object to Insurers' request, the Court GRANTS Insurers' motion with respect to RFP Nos. 13, 15-16, and 23.

iii.   <u>RFP Nos. 19-20</u>

After Icicle changed ownership in 2016, it hired insurance broker Marsh. Dkt. #78 at 9. Insurers request all Marsh USA and Marsh Canada files concerning the policy and loss of hire claim, including records of the regional offices involved in Portland, OR, Seattle, WA, New Orleans, LA, New York, NY, and Halifax, Nova Scotia, Canada (RFP Nos. 19-20). Icicle initially objected that both requests were more appropriately addressed through discovery directed to Marsh USA and Marsh Canada. Dkt. #73-2 at 12-13. Icicle now contends that it has requested that Marsh forward relevant documents to Icicle, but because Marsh prefers to be subpoenaed directly by Insurers and will accept service by mail, "Insurers need only subpoena Marsh, which they could have done long ago . . . ." Dkt. #78 at 10-11.

Parties do not dispute that Icicle's insurance broker records are relevant to intent and interpretation of the loss of hire insurance. Fed. R. Civ. P. 34(a) allows courts to order a party to

produce relevant documents "as long as those documents or items are in the possession, custody, or control of a party to the litigation." *Quest Integrity USA, LLC v. A.Hak Indus. Servs. US, LLC*, No. C14-1971RAJ, 2016 WL 4533062, at *4 (W.D. Wash. Mar. 23, 2016).   Control over documents "may be established by the existence of a principal-agent relationship." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1156 (D. Ore. 2015) (internal quotations omitted).   Because Marsh is Icicle's broker and agent, Icicle has control over Marsh's files.   *See Suydam v. Reed Stenhouse of Wash., Inc.*, 820 F.2d 1506, 1510 (9th Cir. 1987) (confirming that insurance broker "is the agent of the insured.").   Given that Icicle no longer disputes its control over Marsh's files for purposes of discovery, and considering that this Court's subpoena power may not extend to Canada, *see* Fed. R. Civ. P. 45(b), the Court agrees that to avoid further delay, Icicle must produce the requested Marsh records in response to RFP Nos. 19 and 20.

   iv. <u>RFP Nos. 1-5, 10, 12</u>

   Insurers also request operating and layup plans, schedules, and records for the vessels RM THORSTENSON and GORDON JENSEN, for the years 2014 through 2020 (RFP No. 1); business and financial plans, forecasts, and projections, 2014 through 2020 (RFP No. 2); fish processing and production records for RM THORSTENSON and GORDON JENSEN, 2014 through 2020 (RFP. No. 3); shore plant records for processing cod, herring, sockeye salmon and pink salmon in 2017 and 2018, including the fish sources by fishery management area and vessel (RFP No. 4); catch and processing records for Area M pink salmon for processing vessels and shore plants, 2014 through 2020 (RFP No. 5); financial records for 2017 and 2018, including budgets, balance sheets, profit and loss statements, analyses, and tax returns (RFP No. 10); corporate records concerning the 2017 and 2018 fisheries for which losses were claimed, including minutes, analyses and reports (RFP No. 12).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For reach of these requests, Icicle contends that it has produced responsive documents. Regarding RFP No. 1, Icicle claims that Insurers' counsel stated that "wheel house log books" would be a "sufficient alternate source of the requested information" and that counsel is now reversing his position. Dkt. #78 at 7.  However, as reflected in counsels' correspondence, Insurers did not agree that the wheelhouse logs—which only pertained to actual operations—were fully responsive to their request for "plans, projections, schedules and records of anticipated operations." *See* Dkt. #73-4 at 3.  The Court agrees that Icicle is required to produce full and complete responses to this request.

Regarding RFP Nos. 2-5 and 10, Icicle identifies documents it has already produced that are responsive to Insurers' requests, and that Icicle supplemented its production on January 22 and 25, 2021. Dkt. #78 at 7-8.  The Court agrees that Icicle's response does not clearly indicate whether it has fully and completely responded to Insurers' requests for the entire requested time range.  For that reason, to the extent any documents remain to be produced, Insurers' motion is granted with respect to compelling a full and complete production in response to RFP Nos. 2-5 and 10.

Regarding RFP No. 12, Icicle explains that it has not produced any responsive documents to date because Icicle is not a publicly-held company and does not keep "corporate records" but "continues to search for documents and will supplement as soon as any responsive documents are found if such documents exist."   Dkt. #78 at 9.  The Court agrees that to the extent such documents exist, Icicle is required to produce them.

For the reasons set forth above, Insurers' Motion to Compel is GRANTED.

//

//

ORDER RE: MOTIONS TO COMPEL - 7

v.     Fees and Costs

Icicle objects to Insurers' request for fees and costs, Dkt. #78 at 12-13, but as Insurers point out in their reply, they never requested fees or costs for bringing the instant motion.  Dkt. #83 at 6.  For that reason, the Court need not consider this issue.

## C. Icicle's Motion to Compel

On November 16, 2020, Icicle served a subpoena duces tecum on Bauer Moynihan & Johnson LLP ("Bauer Moynihan"), counsel for Insurers, seeking information to establish attorney Matt Crane's role in investigating, evaluating, negotiating, and/or processing the loss of hire claim related to this case.  Dkt. #82-4.  Icicle also served its third Request for Admission ("RFA") on December 16, 2020 related to this same issue.  The Court GRANTS IN PART Icicle's motion to compel with respect to the subpoena and the RFAs as set forth below.

### i.     Subpoena Duces Tecum

Icicle's subpoena seeks Bauer Moynihan's complete file regarding services rendered to and communications with insurers with respect to (1) the 2017 hull claim and the 2017-2018 loss of hire claim; and (2) Icicle's 2016 loss of hire claim related to the vessel GORDON JENSEN. Dkt. #82 at 11-12.  Insurers object that the subpoena is overly broad and imposes undue burden and expense, seeks irrelevant documents and information concerning the GORDON JENSEN loss of hire claim, and improperly seeks privileged attorney-client communications and work product for those documents outside the scope of the *Cedell* rule.  Dkt. #84.

1.   Complete File on 2017 Hull Claim and 2017-2018 Loss of Hire Claim

The Court agrees that Icicle has not shown sufficient need for these documents from Bauer Moynihan to justify its subpoena.  Given that Insurers have produced their loss of hire claim files for the RM THORTSENSON, it is unclear why Icicle also seeks production of the claim file from

Insurers' non-party law firm.  Icicle argues that it is "unaware of any requirement in Rule 45 to demonstrate to a third party . . . that the issuing party has a 'legitimate need' for the subpoenaed material." Dkt. #81 at 9.  However, Rule 45 requires that the party responsible for issuing and serving a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  Relevance and the need of the requesting party for the information are central to the inquiry of whether a Rule 45 subpoena imposes an undue burden on a non-party.  *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409–10 (C.D. Cal. 2014) ("In addition to the need of the requesting party for the information and the burden on the non-party in complying with the subpoena, other factors a court should consider include the relevance of the requested information and the breadth or specificity of the discovery request.") (internal citations omitted).  Furthermore, "[c]ourts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Id.*

To the extent Icicle seeks to require Bauer Moynihan to provide discovery on its services rendered and communications with Insurers, it has failed to demonstrate why that same information cannot be obtained from Insurers, who are actual parties to this action.  Icicle argues that it tried to obtain documents directly from Insurers but "their responses lack uniformity and clearly are incomplete." Dkt. #81 at 8.  While this argument may support a motion to compel complete responses from Insurers, it does not sufficiently justify propounding discovery on a non-party.

To the extent Icicle seeks discovery from Bauer Moynihan or Mr. Crane that is not duplicative of what Icicle has already requested from Insurers, the Court is not persuaded that such information is relevant to Icicle's counterclaims or defenses.  Icicle argues that it needs access to the Bauer Moynihan file to confirm that "it has documentation of all Matt Crane's

efforts" to "direct, orchestrate, and manipulate the conclusions of Jonathan Spencer and Benjamin Thomas" with respect to the Manos Report, which was an expert report drafted by independent fishing expert Tom Manos.  Dkt. #91 at 3-4.[1]  However, Icicle's theory of the case that Mr. Crane or his firm directed or manipulated the conclusions of Insurers' consultants is not set forth in its counterclaims, which only allege that Insurers acted in bad faith.  *See* Dkt. #18 at ¶ 79 (claiming that "[t]he Plaintiff insurers either hid the Manos report from their own consultants or purposefully conspired with them to ignore its conclusions.").  Indeed, Mr. Crane and his firm are only identified in Icicle's counterclaims to the extent that Mr. Crane communicated with Insurers' lead representative, Paul Butler, regarding the Manos Report.  *See* Dkt. #18 at ¶¶ 71-71 ("A Matt Crane email advised Paul Butler, the insurers' lead representative, of a report from Tom Manos, 'the underwriters salmon expert.'  The report confirmed ICICLE's LOH claim. . . . The Plaintiff insurers planned, however, to keep their expert's assessment secret from Icicle.").  For that reason, discovery from Insurers' legal counsel does not appear to be relevant to its counterclaims or defenses as currently pleaded.

In support of its relevance argument, Icicle relies heavily on the Washington Supreme Court's decision in *Cedell v. Farmers Ins. Co. of Wash.* for the proposition that there is no attorney-client privilege or work product privilege between an insurer and retained counsel that engaged in the quasi-fiduciary tasks of investigating, evaluating or processing the claim.  *See* 176 Wn.2d 686, 699, 295 P.3d 239 (2013) ("Upon such a showing, the insurance company is entitled to an in camera review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those

---

[1] Mr. Crane's alleged manipulation of Insurers' consultants was a central issue of Icicle's motion to disqualify, which this Court denied on March 5, 2021.  Dkt. #97.

ORDER RE: MOTIONS TO COMPEL - 10

mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured.").[2]

Icicle identifies cases in which this Court, applying *Cedell* to bad faith insurer claims, found that

an insurer's counsel were material witnesses in the case and therefore subject to deposition. *See*

*Mkt. Place N. Condo. Ass'n v. Affiliated FM Ins. Co*., No. C17-625 RSM, 2018 WL 3956130, at

*1 (W.D. Wash. Aug. 17, 2018) (Ordering insurers' counsel to sit for depositions where "current

defense counsel engaged in at least some claims processing and handling by assisting in the

drafting of the four key letters"); *Everest Indem. Ins. Co*., 980 F. Supp. 2d at 1280 (finding that

"testimony [of insurer's counsel] is relevant to determining whether QBE/CAU acted reasonably

in denying Derus' tender, and Everest is entitled to take her deposition").

       Here, however, Icicle is not requesting a deposition of Mr. Crane or moving to compel

production of documents that Insurers are withholding under attorney-client and/or work product

privileges.  Rather, Icicle seeks to compel discovery from non-party Bauer Moynihan for files

related to Mr. Crane's functions in investigating, evaluating, negotiating, and processing Icicle's

loss of hire claim.  Whether *Cedell* affects potential claims of attorney-client privilege documents

has no bearing on the relevance or necessity of these documents in the first instance.  Absent a

clear explanation from Icicle of what relevant material it seeks from Bauer Moynihan that cannot

already be obtained from Insurers, the Court finds that Icicle's non-party subpoena imposes an

undue burden on Bauer Moynihan.  The Court therefore will not compel a response.

//

//

---

[2] The Court notes that while federal courts look to state law governing attorney-client privilege, "[w]hatever *Cedell* holds as to the presumptive inapplicability of the work product doctrine, those holdings are not binding in federal court" given that "Federal Rule of Civil Procedure 26(b)(3) invariably governs assertion of work product protection in federal court." *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, No. C13-543RAJ, 2014 WL 6908512, at *4 (W.D. Wash. Dec. 8, 2014) (collecting cases).

ORDER RE: MOTIONS TO COMPEL - 11

2.   Complete File on 2016 GORDON JENSEN Loss of Hire

Insurers object to production of Bauer Moynihan's file on the GORDON JENSEN 2016 loss of hire claim on the basis that the 2016 claim has no connection to the instant lawsuit.  The Court agrees.  Icicle contends that the requested documents are relevant given that Insurers sought discovery on the GORDON JENSEN related to mitigation.  Dkt. #91 at 4.  Insurers' RFPs and RFAs confirm that they sought discovery on the issue of mitigation, meaning when and how much the GORDON JENSEN could have mitigated losses claimed by Icicle as a result of the RM THORSTENSON's engine damage that interrupted its 2017-2018 operations.  *See* Dkt. #82 at 47-56.  However, Icicle has not demonstrated how the subject of its subpoena—Bauer Moynihan's file on the GORDON JENSEN 2016 loss of hire claim—is relevant to the issue of mitigation, nor any other issue relevant to its counterclaims or defenses.

To further justify the relevance of documents related to the separate GORDON JENSEN claim, Icicle references an email from Paul Butler to forensic accountant Ben Thomas requesting his assistance on the RM THORSTENSON loss of hire claim based on his work on the GORDON JENSEN loss of hire claim.  Dkt. #82 at 60.  Icicle offers no clear explanation as to how this email justifies discovery of Bauer Moynihan's file on the GORDON JENSEN loss of hire claim and draws no connection between that claim and the instant lawsuit.  For these reasons, the Court agrees with Insurers that Icicle has failed to show how documents related to the 2016 GORDON JENSEN loss of hire claim are relevant to the instant case.

Furthermore, even if GORDON JENSEN claim documents were relevant to the instant case, Icicle has made no allegations of bad faith concerning the 2016 claim.  Accordingly, *Cedell* does not extend to the GORDON JENSEN loss of hire claim, and any discoverable documents would therefore be subject to attorney-client privilege.

ORDER RE: MOTIONS TO COMPEL - 12

1

2       ii.      *Requests for Admission*

3           Icicle's RFAs request that Insurers admit that Mr. Crane coordinated the sharing of

4   information between experts retained to assist in evaluating the 2017-2018 loss of hire claim

5   (RFA No. 32) and that Mr. Crane and Paul Butler were the primary contacts with Icicle for

6   purposes of adjusting the 2017-2018 loss of hire claim (RFA No. 34).  Icicle argues that these

7   RFAs "explore a proper purpose given the application of *Cedell* to this case; and Icicle alleges

8   any work product privilege has been waived."  Dkt. #81 at 12.  Insurers respond that these RFAs

9   are irrelevant given that the question of whether *Cedell* applies here is not in dispute.  Dkt. #84 at

10  10 (Insurers "are not contesting the application of *Cedell* to the RM THORSTENSON loss of hire

11  claim").

12          Even though Insurers are not contesting the application of *Cedell* and neither Bauer

13  Moynihan nor Mr. Crane are parties to the lawsuit, the Court finds that both RFAs bear some

14  conceivable relevance to Icicle's counterclaims alleging Insurers' bad faith handling of the RM

15  THORSTENSON loss of hire claim.  For that reason, Insurers are ORDERED to provide legally

16  adequate responses to RFAs No. 32 and No. 34.

17          However, the Court agrees that the remainder of Icicle's RFAs seek admissions related to

18  Bauer Moynihan and/or Mr. Crane's vicarious liability and are irrelevant to Icicle's counterclaims

19  and defenses.  These RFAs request admission that all acts and omissions on Mr. Crane's part in

20  investigating, evaluating, negotiating, and/or processing the 2017-2018 loss of hire claim were

21  performed within the scope of his retention with the U.S. Insurers and the London insurers (RFA

22  Nos. 35-36); that the U.S. Insurers, the London Insurers, and/or Paul Butler had the right to control

23  the manner in which Mr. Crane investigated, evaluated, negotiated, and/or processed the 2017-

24  2018 loss of hire claim (RFA Nos. 37-39) and that Paul Butler controlled the manner in which

25

26

27

28

ORDER RE: MOTIONS TO COMPEL - 13

Mr. Crane performed those tasks (RFA No. 40); that Mr. Crane operated as an agent for the U.S. and London Insurers performing those tasks (RFA Nos. 41-42); and that the U.S. and London Insurers are vicariously liable for all acts and omissions on the part of Mr. Crane with respect to those tasks (RFA Nos. 43-44).  Icicle notes that it seeks these admissions to "avoid having to name Matt Crane individually either as a third party defendant in this action or as a defendant in a separate action."  Dkt. #81 at 12-13.  Icicle also states that it has sought agreement from Insurers to amend its counterclaims to add a claim for negligent handling against Mr. Crane and Bauer Moynihan, but that Insurers have refused to agree.  Dkt. #91 at 7, n.17.

While it is apparent that Icicle seeks to explore the issue of Insurers' liability for Mr. Crane's or his firm's actions, Rule 26 limits the scope of discoverable material to "matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Neither Icicle's counterclaims nor defenses allege vicarious liability, respondeat superior, or any other theory alleging that Insurers are liable for Mr. Crane's actions or omissions.  To the extent Icicle now wishes to amend its counterclaims and defenses, it may not do so through requests for admission to "avoid" the task of naming Mr. Crane or his firm as third-party defendants, revising its counterclaims or defenses, or otherwise amending its Answer.  For that reason, given that Icicle's defenses and counterclaims allege bad faith by Insurers, not Bauer Moynihan or Mr. Crane, the Court finds that Icicle's RFAs seeking admissions as to Mr. Crane's actions are beyond the scope of relevance.

 *iii.*   *Fees and Costs*

Both parties seek fees and costs related to Icicle's motion to compel.  Dkts. #81 at 13; #84 at 12.  Because Icicle partially prevailed on its motion, the Court will consider whether an award of reasonable attorney fees and costs is appropriate.

ORDER RE: MOTIONS TO COMPEL - 14

Where a party moves to compel disclosure in response to an evasive or incomplete disclosure, answer, or response, that party may be entitled to reasonable expenses incurred in making the motion including attorney's fees.  Fed. R. Civ. P. 37(a)(5)(A).  However, the court must not order payment if the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances would make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Here, the Court finds that Insurers' position was substantially justified. Of the discovery requests and RFAs for which Icicle moved to compel discovery, the Court concluded that only two RFAs bore some connection to Icicle's counterclaims and defenses.  These RFAs, which sought admissions that Mr. Crane coordinated the sharing of information between experts and that Mr. Crane and Paul Butler were the primary contacts with Icicle for purposes of adjusting the loss of hire claim, are only somewhat relevant to this lawsuit given that Mr. Crane is not a party to the case.  While the Court ultimately concluded that Icicle's requests had enough of a connection to Icicle's bad faith counterclaims to compel a response from Insurers, Insurers' objection based on relevance was substantially justified.  For that reason, the Court DENIES Icicle's request for fees and costs.

## IV.   CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs-Counterclaim Defendants Insurers' Motion to Compel, Dkt. #71, is GRANTED.  Defendants-Counterclaim Plaintiffs Icicle are ORDERED to fully and completely answer and respond to Insurers' discovery requests within **21 days** from the date of this Order;

ORDER RE: MOTIONS TO COMPEL - 15

(2)   Defendants-Counterclaim Plaintiffs Icicle's Motion to Compel, Dkt. #81, is GRANTED IN PART AND DENIED IN PART.  Within **21 days** from the date of this Order, Insurers are ORDERED to amend their answers to RFA 32 and RFA 34 of Icicle's Third Requests for Admission to either admit or deny, and are precluded from interposing any objections in their answers.  The remainder of Icicle's Motion to Compel is DENIED.


DATED this 13th day of August, 2021.




RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS TO COMPEL - 16